# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.B. and M.C.**

**No. 18-0652** (Ritchie County 16-JA-31 and 16-JA-32)

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother L.B., by counsel Ira A. Richardson, appeals the Circuit Court of Ritchie County's June 15, 2018, order terminating her parental and custodial rights to J.B. and M.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem for J.B. ("guardian for J.B."), Dreama D. Sinkkanen, filed a response on behalf of J.B. in support of the circuit court's order. The guardian ad litem for M.C. ("guardian for M.C."), Michael D. Farnsworth Jr., filed a response on behalf of M.C. in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by not "reopening the dispositional hearing," terminating her parental and custodial rights rather than imposing a less-restrictive dispositional alternative, and denying post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2016, the DHHR filed a petition alleging that petitioner was acting erratically while in public and was deficient in caring for her youngest child. The DHHR alleged that a Child Protective Service worker requested that petitioner take a drug screen and, despite petitioner's insistence that she would pass the screen, she tested positive for amphetamine and methamphetamine. Petitioner later admitted that she used methamphetamine after receiving it as a birthday present in August of 2016. Additionally, petitioner admitted to abusing marijuana and prescription drugs. Thereafter, the circuit court held an adjudicatory hearing in October of 2016,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

at which petitioner stipulated to the allegation that substance abuse negatively affected her ability to parent. The circuit court adjudicated petitioner as an abusing parent and granted her a post-adjudicatory improvement period. Petitioner agreed to participate in parenting and adult life skills classes, drug screening, supervised visitations, and a psychological evaluation.

In March of 2018, the circuit court held a dispositional hearing. According to the evidence, in October of 2016, petitioner became subject to conditions of bond associated with a felony charge of fleeing from an officer in a vehicle. However, petitioner's bond was revoked in December of 2016 after she tested positive for use of controlled substances and continued associating with a convicted felon. Petitioner was later released on bond, but that bond was revoked in February of 2017 after she was dishonest about substance use and tested positive for benzodiazepines. Petitioner participated in inpatient substance abuse treatment from June of 2017 to July of 2017. However, a treatment manager at that facility testified that petitioner made no progress in the program, was not receptive to making changes in her life, and was ultimately discharged for non-compliance with the rules of the program. Petitioner again participated in an inpatient substance abuse treatment program from August of 2017 to October of 2017. The treatment coordinator from that facility testified that petitioner was "all talk, no action," showed no growth during the program, and was involuntarily discharged from the program for being disrespectful to staff and other residents. The treatment coordinator further opined that petitioner required long-term inpatient substance abuse treatment of at least nine to twelve months in duration.

Three service providers testified regarding petitioner's limited progress through parenting classes, adult life skills classes, and supervised visitations. The service provider testified that petitioner did not complete the curriculum of the parenting or adult life skills classes, and that while petitioner would participate, she made no change to her behavior. The provider further noted that petitioner expressed unreasonable expectations for the children and recalled one example wherein petitioner locked the older child in a closest for an entire weekend in order to teach her how to be alone. The provider opined that petitioner's relationship with the older child was more like an older sister than a parent and that petitioner acted more like a babysitter than a parent to the younger child. The provider indicated that petitioner allowed the older child to care for the younger and took a "backseat role." A second provider testified that she provided services to petitioner from August of 2017 to October of 2017 and that petitioner did not complete those services. This provider testified that petitioner expressed a desire to obtain social security benefits rather than work to support her children. The provider noted that petitioner had no objective indication of disability. Finally, petitioner's visitation supervisor testified that the children did not respond to petitioner during visitations, as they were neither excited to see her nor sad to leave her. The supervisor believed that the visitations were not positive for the children.

Petitioner testified and admitted that she did not complete the services required in order to regain custody of her children. Petitioner explained that she was currently incarcerated, but would become parole eligible in April of 2018. Petitioner requested that the great-aunt of the children be appointed as guardian of the children until petitioner could complete services. The great-aunt testified that petitioner had a bond with the children; however, she also expressed that she had not seen the children since July of 2016. Similarly, the children's maternal grandmother

testified regarding petitioner's bond with the children, but could not remember when she herself last saw the children. At the conclusion of the hearing, the circuit court instructed the parties to submit proposed findings of fact and conclusions of law.

In April of 2018, petitioner filed a "Motion to Reopen Dispositional Hearing and Present Evidence." In this motion, petitioner alleged that she had been granted parole and would be released from incarceration in early May of 2018. Petitioner argued that her release from incarceration was a substantial change in circumstances and justified further hearings. In June of 2018, the circuit court held a hearing on petitioner's motion to reopen the dispositional hearing. Ultimately, the circuit court denied petitioner's motion to reopen as her release from incarceration was not "tantamount to her ability to successfully complete an improvement period in consideration of her past performance." Further, the circuit court reasoned that the children had been in foster care for fifteen of the last twenty-two months and that petitioner needed long-term, inpatient substance abuse treatment to remedy her substance abuse issue. Ultimately, the circuit court found that petitioner was habitually addicted to drugs to the extent that her parenting skills were seriously impaired and that she had not responded to or followed through with the recommended and appropriate treatment to improve parental functioning. The circuit court further found that it was necessary for the welfare of the children to terminate petitioner's parental and custodial rights. The circuit court also denied petitioner's motion for post-termination visitation. Accordingly, the circuit court terminated petitioner's parental and custodial rights in its June 15, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

---

[2]The children's respective fathers' parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their current relative foster placement.

On appeal, petitioner argues that the circuit court erred in denying her motion to "reopen" the dispositional hearing and refusing to hear additional evidence regarding her release from incarceration. We disagree. Here, the circuit court granted petitioner a hearing on her motion to reopen the dispositional hearing and fully considered petitioner's release from incarceration and the impact of such a fact in its dispositional decision. The circuit court's decision to terminate petitioner's parental and custodial rights was not based on petitioner's inability to participate in an improvement period due to her incarceration. Rather, the decision was based on petitioner's previous conduct during the proceedings. The circuit court reasoned that petitioner's limited participation in her improvement period demonstrated an inability to comply with the terms of an improvement period or remedy the conditions of abuse and neglect. Further, while petitioner asserts on appeal that she has not used controlled substances since February of 2017, this evidence was available to petitioner and presented at the final dispositional hearing, as was evidence that petitioner was not inclined to change her lifestyle, despite parenting and adult life skills services, and that she did abuse controlled substances during her improvement period. Accordingly, we find that the circuit court did not err in denying petitioner's motion to reopen the dispositional hearing.

Petitioner also argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative. We disagree. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(1) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] habitually abused or [is] addicted to alcohol, controlled substance or drugs, to the extent that proper parenting skills have been seriously impaired and the [parent] . . . [has] not responded to or followed through the recommended and appropriate treatment." Also, we have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Here, the record supports the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the welfare of the children. Despite the DHHR's intervention and services, petitioner continued to abuse drugs during her improvement period, failed to make necessary parenting changes, and was incarcerated as a result of her continuing drug abuse. Further, while petitioner participated in two inpatient substance abuse treatment programs, both of her treatment providers agreed that she made no progress during said treatment. Finally, petitioner continued to take a "backseat" during visitations with the children and allowed her eight-year-old daughter to care for her four-year-old

4

son. The circuit court's findings that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination was necessary for the children's welfare were not clearly erroneous. Therefore, termination of petitioner's parental and custodial rights, rather than some less-restrictive dispositional alternative, was appropriate. Accordingly, we find petitioner is entitled to no relief.

Finally, petitioner argues that the circuit court erred in denying her post-termination visitation with the children because of uncontradicted evidence regarding the bond between her and the children. We disagree.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D*., 211 W.Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner cites generally to the circuit court's dispositional order to assert that a close emotional bond exists. However, the record includes testimony from services providers that "the visits were not positive for the children and that the children were neither excited to see [petitioner] or sad to leave her during these visits." The children were further described as "very non-responsive" during the visits. Clearly, if the visits were not positive for the children, it is not in their best interests to visit with petitioner. Therefore, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 15, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

5